IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROTH GRADING, INC. d/b/a IMPACT ROLLER TECHNOLOGY, a Nebraska Corporation, | ) ) ) ) | 8:04CV632 |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| TESTA CORP., a Massachusetts Corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

Before the court is defendant Testa Corporation's Motion to Dismiss or in the Alternative to Transfer pursuant to Fed. R. Civ. P. 12(b)(2)-(b)(3) (filing no. 3). Plaintiff Roth Grading, Inc. has responded in opposition to the motion and defendant has filed a reply. The court, having considered the motion, briefs, and the relevant law, determines that the defendant's motion should be denied.

**Background**

The events giving rise to this lawsuit began in March 2004 when Testa Corporation ("Testa")–a Massachusetts corporation in the business of demolishing large industrial and commercial structures–contacted Roth Grading, Inc. ("Roth")–a Nebraska Corporation in the business of selling construction equipment–to purchase a piece of equipment called the "Impactor." *See* Complaint at 1 attached to defendant's Notice of Removal (filing no. 1). The "Impactor" is a machine used for breaking pavement and performing soil compaction. According to plaintiff, Testa wanted the "Impactor" to be used specifically for a demolition project it had in Tampa, Florida. In July 2004, after a number of phone conversations and negotiations, plaintiff contends that the parties agreed on the sale of an

"Impactor" for the price of $129,600.00, plus shipping in the amount of $2,500.00. The parties agreed that Roth was to deliver the "Impactor" to the job site in Florida. In August 2004, and after additional phone calls from Testa allegedly urging Roth to deliver the "Impactor" quickly, Roth delivered the "Impactor" to Testa in Florida. Roth personally hauled the "Impactor," using a semitrailer, from Nebraska to Florida. At the time of delivery, Roth also trained a Testa employee to use the machine. Shortly after Roth returned to Nebraska, Testa again called Roth and requested that a pair of spare tires be sent to the project in Tampa, Florida. Roth sent the tires to Testa and, shortly thereafter, also sent an invoice for the "Impactor." In November 2004, after at least ten phone calls from Testa to Roth promising payment, Roth received a letter from Testa indicating it was not going to buy the "Impactor" from Roth, because it did not do the job as represented by Roth. Roth then filed a complaint in Nebraska state court for breach of contract. Pursuant to 28 U.S.C. §§ 1332 and 1441, Testa then removed this case to the United States District Court for the District of Nebraska. Testa seeks to dismiss this action arguing lack of personal jurisdiction, improper venue, and transfer of this case to the District of Massachusetts. For the reasons stated below, the court finds that Testa's motion to dismiss should be denied.

## Analysis

The facts in a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion. *Radaszewski v. Telecom Corp., 981 F.2d 305, 310 (8th Cir. 1992).* "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of

jurisdiction." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). The plaintiff bears the ultimate burden of proving personal jurisdiction over the defendant. *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988).

Because Nebraska applies its long-arm statute to the fullest extent permissible under due process, the court needs only to determine "whether exercise of personal jurisdiction comports with due process." *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921-22 (8th Cir. 1995) (citation omitted). "To evaluate the propriety of jurisdiction, [the court needs to consider]: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id. (citation omitted).* "The most important factors are those which analyze forum contacts." *Id.* "To maintain personal jurisdiction . . . [the] contacts with [the state] must be more than 'random,' 'fortuitous,' or 'attenuated.'" *Id.* "[A party] must have purposefully availed itself of the 'privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* "[The party] must have created a 'substantial connection' with the forum." *Id.*

In this case, Roth contends that Testa had sufficient minimum contacts with the forum state, Nebraska, to satisfy due process. The court agrees. For purposes of this motion, the court will assume that the facts alleged by Roth are true. Testa pursued a business relationship with Roth, a Nebraska resident. This business relationship was a contract for the sale of a machine worth more than $100,000. To negotiate the purchase, Testa contacted Roth multiple times during a period of approximately six months (March

to August 2004). In addition, the parties continued to have contact after they negotiated the sale. Testa first contacted Roth again when it needed a pair of spare tires for the machine, and then contacted Roth at least ten more times promising payment for the invoice. The business relationship of the parties evolved into one that required regular communication between Testa and Roth in Nebraska. These communications or contacts between Testa and Roth were not random, fortuitous or attenuated. The court finds that Testa's contacts created a substantial connection with Nebraska. The court also findsTesta purposefully availed itself of the privilege of conducting business in Nebraska, thus invoking the benefits and protections of its laws.

The defendant cites *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.* to support its argument that there is no personal jurisdiction. However, Bell Paper is distinguishable from the case at hand. For example, in *Bell Paper*, the parties did not contract or establish a business relationship directly. Bell Paper, a South Dakota corporation, arranged with a California broker to contract or establish a business relationship with Trans Western, a California corporation. *Bell Paper, 53 F.3d at 921.* In this case, there were no third parties involved in establishing the parties' business relationship. Testa directly contracted or established a business relationship with Roth. In *Bell Paper*, the contact between the parties occurred during the contract negotiations. *Id.* Here, the parties continued to have contact even after they negotiated the contract for the sale of machinery.

In evaluating the nature and quality of the contacts, the quantity of the contacts between the parties, and keeping in mind that at this stage of the litigation the court must view the uncontested allegations as true and in the light most favorable to Roth, the court determines that Roth has made a prima facie showing of jurisdiction. Accordingly, Testa's

motion to dismiss for lack of personal jurisdiction is denied. The court has likewise reviewed Testa's request for change of venue and to transfer this case to Massachusetts. The court finds that venue is appropriate in this case pursuant to 28 U.S.C. §§ 1391(c) and 1441 for the reasons set forth herein. The court further finds that based on what has been presented to the court to date, Testa has failed to provide the court with sufficient reasons to transfer this case to Massachusetts pursuant to 28 U.S.C. § 1406(a).

IT IS HEREBY ORDERED that the defendant's motion to dismiss, to change venue or in the alternative to transfer (filing no. 3) is denied.

DATED this 26th day of September, 2005.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge